The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Kim Cramer. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
****************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed between plaintiff Lillian Jane Duchaine McDaniel and defendant Checker's Restaurant.
3. Consolidated Administrators was the carrier on the risk.
4. The employee's average weekly wage at the time of her alleged injury by accident was $365.00.
5. The issue before the Commission is whether the plaintiff sustained a compensable injury by accident on or about April 24, 1994.
****************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a female who was born on April 7, 1961. As of April 24, 1994, she had been working for the defendant-employer for about one year, and was a co-manager.
2. On or about May 13, 1990 while working at McDonalds, plaintiff sustained an injury to her back. Plaintiff was seen by Dr. Allen Bevis, an orthopaedic specialist. In addition to back pain, plaintiff had pain radiating into her calf and down into her foot, as well as some tingling. An MRI was normal except for some mild degenerative changes and some bulging of a disc was shown on the CT scan. There was no evidence of disc herniations. On November 7, 1990 she was assessed with "recurrent episodes of significant back pain associated with objective findings" and given an impairment rating of ten percent to her back.
3. In June, 1992 plaintiff sought medical treatment for symptoms of numbness in her right hand. Nerve conduction studies were all normal with no evidence of compression neuropathy either at the cubital tunnel or Guyon's canal. There is no evidence of any further follow-up by Dr. Bevis for the hand complaints, although plaintiff later apparently had a carpal tunnel release on the right hand.
4. On March 29, 1993 plaintiff phoned Dr. Bevis' office with complaints of back pain. An appointment was scheduled for that Friday and Dr. Bevis prescribed Soma 350mg to use as needed for muscle spasm and Wygesic to use as needed for pain. Plaintiff did not show up for her appointment that Friday, April 2, 1993.
5. On April 24, 1994 plaintiff was working in the cooler area of the defendant. She was aggravated and angry because someone had left a box of tomatoes in the "wrong place". She moved the box of tomatoes to a shelf. After she did so she began having chest pain, pain in her neck down through her back and into her legs, and shortness of breath. She was very anxious and worried that she was having a heart attack. Plaintiff called Ken Starnes, another supervisor for defendant, and told him she was experiencing shortness of breath and chest pain. Starnes told her to go to the hospital. Plaintiff's husband picked her up from work and took her to the emergency room.
6. Plaintiff was seen that day at the emergency room of Frye Regional Medical Center, where she complained of shortness of breath, chest pain, and pain in her back and legs and that she felt light headed. At the hospital, the staff did an EKG to check her heart. The assessment was that plaintiff was suffering from anxiety and sinusitis. She was prescribed Darvocet and Ampicillin.
7. Plaintiff was seen again at the emergency room two days later on April 26, 1994 when she again complained of back pain. At that time she was ambulatory and in no apparent distress. Following this plaintiff did not seek any additional medical treatment for her back until January, 1995 when she saw Dr. Ronald Benfield, an orthopaedic specialist.
8. Plaintiff did not return to work after April 26, 1994 or provide her employer with any medical excuses for her failure to return to work. As a result, plaintiff was terminated effective May 7, 1994 for her failure to report to work or otherwise provide an excuse for her absence.
9. On January 2, 1995 plaintiff first saw Dr. Benfield, at which time she was complaining of pain in her thoracic and lower back, with radiation into her right hip, and right knee and right foot. Dr. Benfield found that she was neurologically intact, with no evidence of a ruptured disc. She had good reflexes, good strength, good back flexibility and good extension of her spine. Dr. Benfield found no objective basis for her complaints, which were all subjective. His assessment was that she had bursitis in her hip and chondromalacia of the patella of her right knee. He was otherwise unable to determine any specific etiology for her pain. Dr. Benfield put her on an anti-inflammatory and sent her to three weeks of physical therapy, because he knew plaintiff had not worked for several months, and he thought this would help get her reconditioned. Dr. Benfield did not excuse her from work although he would have done so only for the time she was in physical therapy.
10. Dr. Benfield saw plaintiff again on February 21, 1995. As of that date, he would not have been keeping her out of work. He has found nothing objective to explain her complaints of pain. Dr. Benfield found no basis for any permanent impairment, and specifically nothing in excess of the ten percent rating previously given. He has not excused plaintiff from work or found her to be disabled.
11. On June 19, 1995, plaintiff saw Dr. D. Dennis Payne, a rheumatology expert, with complaints of pain and tingling in her right hand, and pain in the neck and upper extremities. Dr. Payne's examination showed no evidence of persistent carpal tunnel syndrome, and no evidence of inflammation. He has assessed plaintiff as having fibromyalgia, which he believes is secondary to her carpal tunnel syndrome. It is Dr. Payne's opinion that the carpal tunnel syndrome may have produced disruption of plaintiff's sleep pattern which then led to symptoms of fibromyalgia. He has not related the plaintiff's complaints of back pain to her alleged accident of April 24, 1994.
12. On April 24, 1994, while working for defendant, plaintiff experienced an acute anxiety attack which caused pain in her chest, back, and legs, as well as shortness of breath and weakness in her legs. The anxiety attack was not caused by an injury by accident arising out of and in the course of her employment with defendant. The evidence does not establish that plaintiff sustained an accident or specific traumatic incident.
13. The incident on April 24, 1994, was not the cause of plaintiff's ongoing back pain. Plaintiff suffered a back injury in 1990, which has resulted in recurrent episodes of back pain.
****************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
Plaintiff has failed to prove by the greater weight of the evidence that on or about April 24, 1994 she sustained an injury by accident or specific traumatic incident arising out of and in the course her employment with defendant. N.C.G.S. § 97-2 (6).
****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Under the law plaintiff's claim must be and the same is hereby DENIED.
2. Each side shall pay its own costs, except that defendant is responsible for the expert witness fees previously approved by the Deputy Commissioner.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________________ LAURA K. MAVRETIC COMMISSIONER
S/ _____________________ COY M. VANCE COMMISSIONER
BSB:rt